*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1753**

Sharon Schirmer, trustee for the next of kin of Cary F. Schirmer,
Appellant,

vs.

The Duluth Clinic, Ltd., d/b/a "Essentia Health - Hibbing Clinic," et al.,
Respondents.

**Filed July 5, 2016
Reversed and remanded
Connolly, Judge**

St. Louis County District Court
File No. 69HI-CV-14-542

James T. Smith, Huffman, Usem, Crawford and Greenberg, P.A., Minneapolis, Minnesota
(for appellant)

Barry G. Vermeer, Jennifer M. Waterworth, Gislason & Hunter LLP, Minneapolis,
Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Cleary, Chief Judge; and
Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges the district court's dismissal of her medical-malpractice claim

for failure to comply with the expert-disclosure requirements of Minn. Stat. § 145.682

(2014). Because appellant submitted expert affidavits sufficient to satisfy the statutory requirements, we reverse and remand.

## FACTS

In November of 2010, Cary Schirmer saw his primary care doctor, respondent Dr. Mark D. Wagner, to have a lesion on his back examined. Dr. Wagner diagnosed the lesion as a benign seborrheic keratosis and removed it using liquid nitrogen.

On November 29, 2011, Schirmer saw Dr. Wagner with regard to a tender mass in his right armpit that he had noticed three weeks prior. The Mayo Clinic subsequently performed an excisional biopsy of the mass, which pathology later showed to be malignant melanoma. During a full-body exam, a treating doctor at the Mayo Clinic found a lesion on Schirmer's right lower back, adjacent to the area of the 2010 lesion. A biopsy was performed on the lesion and subsequent testing confirmed that the lesion was the primary melanoma. Based on its testing, the Mayo Clinic's diagnosis was stage III melanoma with in-transit metastases. Despite treatment, Schirmer's cancer progressed to stage IV and spread to his brain. In October of 2012, Schirmer entered hospice care and died.

In June 2014, appellant Sharon Schirmer, as trustee for Schirmer's estate, brought a medical-malpractice wrongful-death suit against Dr. Wagner and his employer, respondent Duluth Clinic Ltd. Appellant alleged that Dr. Wagner's medically negligent treatment of Schirmer led directly to his death. She identified Corey J. Haber, D.O., and Thomas M. Waits, M.D. as her expert witnesses and served their affidavits on respondents. Dr. Haber is a family medicine physician and is licensed to practice medicine in the State of Michigan. Dr. Waits is an oncologist and hematologist currently practicing in Indiana.

2

In his expert affidavit, Dr. Haber opined that Dr. Wagner did not comply with accepted standard of care under the circumstances when he did not order a biopsy or shave excision of Schirmer's lesion in November of 2010. Dr. Haber further stated that Dr. Wagner's failure to provide a description of the lesion in his medical documentation also deviated from the standard of care. In Dr. Haber's opinion, several factors required Dr. Wagner to perform a biopsy, including Schirmer's age and the solitary nature of the lesion.

Appellant's expert as to causation, Dr. Waits, opined in his affidavit that, "based on the rapid growth of the melanoma once it gained access to the lymphatic and vascular systems, it is unlikely the melanoma ha[d] progressed to those systems . . . in 2010." Additionally, Dr. Waits stated that "the prognosis of melanoma patients is closely linked to stage of diagnosis," and "[i]f resection had taken place in November of 2010, it is more likely than not that [Schirmer] would have been cured."

In response to the filings, respondents moved for dismissal under Minn. Stat. § 145.682, subd. 6(c) on the grounds that the expert affidavits failed to comply with the substantive requirements of the statute. Dr. Haber and Dr. Waits served amended affidavits under the 45-day safe harbor provision of Minn. Stat. § 145.682, subd. 6.

In his amended affidavit Dr. Haber attempted to clarify the alleged deviation from the standard of care. He cited Schirmer's age, the solitary nature of the lesion, and the size of the lesion as facts that should raise the suspicion of any physician inspecting a skin lesion or mole that the standard of care required testing. Dr. Waits's amended affidavit sought to clarify the causation element between Dr. Wagner's alleged negligence and the progression of Schirmer's melanoma. Dr. Waits stated that correct diagnosis and treatment

3

of the lesion in 2010 would be associated with a 90% cure rate based on the "high unlikeliness that [the lesion] would have gained access to the lymphatic and vascular systems."

A hearing was held on respondents' motion to dismiss. After considering arguments from both parties, the district court granted the motion to dismiss, concluding that the expert affidavits failed to meet the substantive requirements of Minn. Stat. § 145.682, entitling respondents to dismissal with prejudice. This appeal follows.

## DECISION

### I.     The expert affidavits were sufficient to comply with Minn. Stat. § 145.682.

Appellant challenges the district court's dismissal of her complaint for failure to comply with Minn. Stat. § 145.682. A plaintiff in a medical-malpractice case must submit two affidavits when expert testimony is required to establish a prima facie case. Minn. Stat. § 145.682, subd. 2. The second affidavit must contain the substance of the facts and opinions to which the expert plans to testify and summarize the grounds for those opinions. *Id.*, subd. 4(a). It also must include "specific details" about "the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990). If the plaintiff fails to satisfy these affidavit requirements, then the plaintiff's malpractice claim must be dismissed with prejudice. Minn. Stat. § 145.682, subd. 6(c). Minn. Stat. § 145.682 was enacted by the legislature to eliminate frivolous medical-negligence lawsuits by requiring that plaintiffs

4

file affidavits verifying that their alleged claims are well founded. *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996).

To prove causation, a plaintiff must demonstrate that it is more probable that the plaintiff's injury "resulted from some negligence for which defendant was responsible than from something for which he was not responsible." *Plutshack v. Univ. of Minn. Hosp.*, 316 N.W.2d 1, 7 (Minn. 1982) (quotation omitted). This may be accomplished by "provid[ing] an outline of the chain of causation between the alleged violation of the standard of care and the claimed damages." *Stroud*, 556 N.W.2d at 556. "The gist of expert opinion evidence as to causation is that it explains to the jury . . . 'how' and . . . 'why' the malpractice caused the injury." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 429 n.4 (Minn. 2002). The plaintiff must provide more than "broad, conclusory statements regarding causation." *Id.* at 429. This court reviews a district court's dismissal of a medical-malpractice action under Minn. Stat. § 145.682 for abuse of discretion. *Anderson v. Rengachary*, 608 N.W.2d 843, 846 (Minn. 2000).

The district court determined appellant's expert affidavits to be deficient because they relied on broad, conclusory allegations. While the affidavits are not ideal, we conclude that they comply with the substantive requirements of Minn. Stat. § 145.682 and that appellant has not brought the sort of "nuisance" or "frivolous" medical-malpractice suit that the statute seeks to weed out. Dr. Haber's opinion is that (1) the standard of care, given the particular characteristics of the lesion and the patient, required further testing and a detailed description of the lesion; and (2) Dr. Wagner deviated from the applicable standard of care by failing to perform sufficient testing and by misdiagnosing Schirmer's

5

lesion. Dr. Waits's opinion is that (1) the primary melanoma found by the Mayo Clinic was part of the original 2010 lesion treated by Dr. Wagner; (2) based on the speed with which the melanoma spread after gaining access to the lymphatic and vascular systems, it was unlikely it had progressed to such systems in 2010 and; (3) had Schirmer been properly diagnosed and treated in 2010, the associated cure rate would have been 90%. We find no missing link in this chain of causation. Because the expert affidavits detail the standard of care, Dr. Wagner's alleged deviation from that standard, and adequately set forth the chain of causation, the district court abused its discretion in dismissing appellant's medical-malpractice action.

## II.     The district court improperly weighed conflicting evidence.

Appellant also argues that the district court improperly took into account information outside of the expert affidavits in assessing their sufficiency under Minn. Stat. § 145.682. Under Minn. Stat. § 145.682, a court must base its decision regarding the sufficiency of an expert affidavit on the content of that affidavit, not on any other evidence such as medical records, deposition testimony, or rebuttal affidavits. *See Tousignant v. St. Louis Cnty.*, 615 N.W.2d 53, 60 (Minn. 2000) (stating that the district court's analysis "related to the [defendants'] rebuttal of [plaintiff's] case, not whether [plaintiff] established a prima facie case"); *see also Demgen v. Fairview Hosp.*, 621 N.W.2d 259, 266 (Minn. App. 2001), *review denied* (Minn. Apr. 17, 2001) (stating that the district court incorrectly relied on a rebuttal affidavit).

In its memorandum in support of its order, the district court stated "Dr. Waits never acknowledges the fact that the Mayo Clinic providers who treated Mr. Schirmer

6

documented it was their belief that the primary melanoma site which ultimately spread was in fact the lesion *adjacent* to the lesion that [Dr. Wagner] treated and not the lesion [Dr. Wagner] actually treated." Respondents assert that the district court was merely voicing its own observations rather than utilizing the medical records to determine whether the affidavits were sufficient. This argument fails. The district court explicitly utilized Dr. Waits's failure to rebut the Mayo Clinic records in holding that the chain of causation was not sufficiently stated. Therefore, we hold the district court erred in considering evidence outside of the expert affidavits.

**Reversed and remanded.**